IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY C. WOODFORK, JR.,<br><br>     Petitioner,<br><br>  vs.<br><br>T. FELKER, Warden,<br><br>     Respondent. | Case No. 2:09-cv-00054-JKS<br><br><br><u>MEMORANDUM DECISION</u> |

Petitioner, Ray Woodfork, a state petitioner proceeding *pro se*, has filed a Petition for

Writ of Habeas Corpus under 28 U.S.C. § 2254. Woodfork is currently in the custody of the

California Department of Corrections, incarcerated at the High Desert State Prison in Susanville,

California. Respondent has filed an answer, and Woodfork has filed a traverse.

<u>STATEMENT OF THE FACTS</u>

On December 20, 2001, defendant fatally shot Roberto Grandados-Arguello in the head. The victim had just cashed a check in a convenience store. The jury found that defendant was attempting to rob Arguello when he fired the gun.

At trial, defendant maintained that he was panhandling and that he fired the gun accidentally when Arguello suddenly reached for him. However, in a taped, pretext telephone conversation that defendant had with his ex-girlfriend–a tape the jury heard– defendant admitted that the shooting was neither self-defense nor an accident, that he committed the crime because he needed the money, the he had melted down the pistol to dispose of the evidence, and the he felt no remorse. The court sentenced defendant to life without the possibility of parole.[1]

---

[1] These facts are taken from the unpublished opinion of the Third District Court of Appeal. Lodged Doc. No. 4, p. 2. These facts are presumed correct unless Townsend demonstrates that the determination of these facts was unreasonable, 28 U.S.C. § 2254(d)(2).

1

PROCEDURAL HISTORY

Woodfork appealed his conviction and sentence to the California Court of Appeal, Third Appellate District, which affirmed his judgment and conviction in a reasoned, unpublished decision.  The California Supreme Court denied Woodfork's petition for review.

In May 2007 Woodfork filed a petition for habeas corpus in the Sacramento County Superior Court which denied the petition in a reasoned decision in July 2007.  In September 2007 Woodfork filed a petition for habeas corpus in the California Court of Appeal which summarily denied the petition without comment in October 2007.  In September 2007, the day after Woodfork filed his petition for habeas corpus in the California Court of Appeal, Woodfork filed a second petition for habeas corpus in the Sacramento County Superior Court.  That petition was denied in an unreported,  reasoned decision in November 2007.  In December 2007 Woodfork filed his petition in the California Supreme Court which summarily denied his petition without comment in July 2008.

On January 7, 2009, Woodfork filed the instant Petition in this Court.  In his Petition, Woodfork raises eleven grounds for relief:

1.      Trial counsel was ineffective for pursuing a manslaughter defense instead of accidental murder.

2.      Trial counsel was ineffective for failure to pursue the defense of accidental murder.

3.      Trial counsel was ineffective for failure to object to the jury instruction regarding first degree murder.

4.      The trial court improperly allowed the admission of the pretext phone call between Woodfork and his ex-girlfriend which:

    a.      violated the Fourth Amendment;

    b.      violated the Fifth Amendment;

    c.      violated Sixth Amendment right to have counsel present during interrogation;

    d.      violated criminal code which prohibits the recording of confidential communications and

e.     trial counsel was ineffective for failing to call Woodfork's ex-girlfriend (Kweanna Smith);[2]

5.     Trial court erred by allowing the introduction of his prior conviction because it violated the Sixth and Fourteenth Amendments;

6.     Trial court erred by giving CALJIC 17.10 to the jurors during their deliberations because doing so violated the Fourteenth Amendment.  Similarly, trial counsel was ineffective for failing to object when the court gave CALJIC 17.10 to the jurors during their deliberations;[3]

7.     Trial counsel was ineffective for failing to object to the prosecution's motion to exclude the introduction of witness testimony concerning the victim's alleged affair;

8.     The prosecutor's use of known perjured testimony led to the unlawful conviction of Woodfork and violated the Fourteenth Amendment;

9.     Evidence was insufficient to sustain a conviction of first-degree murder;

10.    The cumulative effect of the errors requires reversal; and

11.    Appellate counsel was ineffective.

Respondent asserts that grounds five, six, seven, eight, nine, ten and eleven are unexhausted.  Respondent does not assert any other affirmative defenses.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[2]  Although this claim is actually presented as a sub-category of ground four, for purposes of clarity, it will be treated as a separate ground.

[3]  Although this claim is actually presented as a sub-category of ground six, for purposes of clarity, it will be treated as a separate ground.

proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[8]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[9]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial

_____

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[11]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

In applying this standard, this Court reviews the last reasoned decision by the state court.[13]  State appellate court decisions that affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[14]  Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[15]   This is considered as the functional equivalent of the appeal process.[16]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[17]  This presumption applies to state trial courts and appellate courts alike.[18]

---

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[14] *Ylst*, 501 U.S. at 802-03.

[15] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002).

[16] *Id.* at 222.

[17] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[18] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[19]  The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams*. . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[20]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[21]

## EXHAUSTION

This Court may not consider claims that have not been fairly presented to the state courts.[22]  Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[23]  A petitioner fairly presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for

---

[19] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[20] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[21] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); see *Pinholster v. Ayers*, 590 F.3d 651, 663 (9th Cir. 2009).

[22] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[23] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

the claim.[24]  A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim.[25]  In the Ninth Circuit, a petitioner must make the federal basis of the claim explicit either by referencing specific provisions of the federal Constitution or statutes, or citing to federal case law.[26]  Mere similarity of claims between a state law claim and a federal law claim is insufficient for exhaustion purposes.[27]  In order to present the substance of a claim to a state court, the petitioner must reference a specific federal constitutional provision as well as a statement of facts that entitle the petitioner to relief.[28]  A petitioner who cites one clause of a constitutional amendment does not exhaust a claim under a different clause of the same constitutional amendment.[29]  If a petitioner cites a state case that analyzes a federal constitutional issue, that federal issue is fairly presented.[30]  The required level of explicitness is the same for *pro se* petitioners and petitioners who are represented by counsel.[31]

Because Woodfork has not presented his fifth, sixth, seventh, eighth, ninth, tenth, or eleventh grounds in any state court, his claims are unexhausted.  This Court also notes that it may deny a *habeas* claim on the merits, the failure to exhaust notwithstanding,[32] when it is clear

---

[24] *See* 28 U.S.C. § 2254(e); *Weaver v. Thompson,* 197 F.3d 359, 364 (9th Cir. 1999).

[25] *Duncan,* 513 U.S. at 365-66.

[26] *Lyons v. Crawford,* 232 F.3d 666, 670 (9th Cir. 2000), *amended and superseded by Lyons v. Crawford,* 247 F.3d 904 (9th Cir. 2001).

[27] *Johnson v. Zenon,* 88 F.3d 828, 830 (9th Cir. 1996).

[28] *Gray v. Netherland,* 518 U.S. 152, 162-163 (1996).

[29] *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).

[30] *Peterson v. Lampert,* 319 F.3d 1153, 1158 (9th Cir. 2003).

[31] *Lyons,* 232 F.3d at 669.

[32] 28 U.S.C. § 2254(b)(2).

that the petition does not raise a colorable federal claim.[33]  Because Woodfork's unexhausted claims lack merit, this Court will address their substance.

DISCUSSION

Woodfork's first, second, third, fourth, fifth, and sixth grounds all involve a claim of ineffective assistance of counsel.[34]  For purposes of clarity and continuity, this Court will address these claims individually in a single section.

Ineffective Assistance of Counsel

Under *Strickland*, to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[35]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[36]  Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[37]  An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[38]

---

[33] *Cassett v. Stewart,* 406 F.3d 614, 624 (9th Cir.2005).

[34] As noted above, Woodfork's fourth and sixth grounds contain secondary claims that his trial counsel was ineffective.  The ineffective assistance of counsel claims will be dealt with in this section.

[35] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[36] *Id.*

[37] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[38] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to

8

*Strickland* and its progeny do not mandate that this Court act as a "Monday morning quarterback" in reviewing tactical decisions.[39]  Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.[40]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[41]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[42]

---

receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[39] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[40] 466 U.S. at 689 (internal citations and quotation marks omitted).

[41] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420 (2009).

[42] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003)).

Petitioner bears the burden of proving that counsel's trial strategy was deficient.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[43]  "[He] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[44]  "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[45]  "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[46]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[47]  The court must then consider those acts or omissions against "prevailing professional norms."[48]  Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[49]

---

[43] *Strickland*, 466 U.S. at 689.

[44] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

[45] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[46] *Strickland*, 466 U.S. at 681.

[47] *Id*. at 690.

[48] *Id*.

[49] *Id*.

Ground One:

In his first ground, Woodfork claims his trial counsel was ineffective for pursuing a manslaughter defense instead of accidental murder.  This argument is without merit as Woodfork has failed to satisfy either prong of *Strickland*.

Woodfork has failed to demonstrate that his counsel's strategy of pursuing a theory of involuntary manslaughter was not within the range of competence demanded of attorneys in criminal cases.[50]  Because, under California law, involuntary manslaughter is premised on the fact the defendant did not have the intent to kill, this theory was consistent with the evidence presented to the jury as well as Woodfork's claim that the shooting was accidental.  Thus, the decision to pursue this theory of defense is not an unreasonable trial strategy.

Woodfork is also unable to show that, but for counsel's tactical decision to pursue an involuntary manslaughter theory, the result would have been different.[51]  The jury was presented with an option of finding the defendant guilty of the lesser crime of involuntary manslaughter instead of first degree murder.  Nevertheless, the jury found Woodfork guilty of the more serious of the two–first degree murder.  Thus, it is illogical that the jury would have been willing to find Woodfork guilty of "accidental murder."[52]  Woodfork is not entitled to relief on his first ground.

Ground Two:

In his second ground, Woodfork claims his trial counsel was ineffective for failure to pursue the defense of "accidental murder."  This is essentially the same claim made in ground one and fails for the same reasons.  Because the theory of involuntary manslaughter is consistent with a theory that Woodfork lacked the intent to kill the victim, Woodfork is unable to show prejudice under *Strickland*.  Woodfork is not entitled to relief on his second ground.

---

[50] *Hill,* 474 U.S. at 57.

[51] *Id.*

[52] From statements made in his Petition, it appears that Woodfork believes that involuntary manslaughter contains a requirement that the defendant intended to kill the victim. Under California law, this is not so.  As noted by the Sacramento Superior Court, "involuntary manslaughter is premised on the lack of intent to kill."  Lodged Doc. 7, p. 2.

<u>Ground Three:</u>

In his third ground, Woodfork claims his trial counsel was ineffective for failing to object to the jury instruction regarding first-degree murder.  Although his argument is not entirely clear, it appears that Woodfork claims the instruction was unconstitutional because it allowed the jury to find him guilty of first degree murder without finding that he had the specific intent to commit murder.  Accordingly, his attorney should have objected to the instruction on constitutional grounds.

As a threshold matter, California's felony-murder rule is not unconstitutional.[53]  Rather, it is a rule of substantive law establishing first-degree murder penalty for murders which occur in the course of committing another felony, and defendant's intent, which the prosecution must still prove, relates to the other felony, rather than murder.[54]  At the trial, the prosecution presented evidence that Woodfork intended to rob the victim and shot him intentionally in the course of the robbery.[55]  Thus, Woodfork is unable to show that his counsel was deficient for failing to object to the instruction either because it was unconstitutional or because the evidence submitted at trial did not justify a first-degree murder instruction.[56]  Woodfork is not entitled to relief on his third ground.

<u>Ground Four:</u>

As part of his fourth ground, Woodfork claims his trial counsel was ineffective for failing to call his ex-girlfriend to the stand to challenge her credibility and the veracity of the contents of the pretext call.  Woodfork presented this argument in his petition to the Sacramento County

---

[53] *McMillan v. Gomez*, 19 F.3d 465, 470 (9th Cir. 1994).

[54] *Id.*

[55] The California Court of Appeal noted that during the pretext phone call Woodfork admitted the shooting was neither accidental or in self-defense, and that he robbed the victim because he needed the money.  Lodged Doc. No. 4, p. 2.

[56] *Hill,* 474 U.S. at 57.

Superior Court, which rejected the claim. The court noted, that counsel's decision not to call Woodfork's ex-girlfriend could have been a tactical decision not to place emphasis on Woodfork's incriminating statements made during the call.[57] Woodfork has failed to demonstrate that this conclusion violated clearly established federal law or constituted an unreasonable determination of the facts.[58]

Woodfork is also unable to show prejudice under *Strickland*. It is clear that the substance of the pretext phone call was Woodfork's incriminating admissions, which were freely made, not the statements or questions of Woodfork's ex-girlfriend. Thus, Woodfork is unable to demonstrate that, but for his counsel's failure to call and question his ex-girlfriend, that the result of the trial would have been any different.[59] Woodfork is not entitled to relief on this ground.

<u>Ground Six:</u>

In his sixth ground, Woodfork contends that his trial counsel was ineffective for failing to object when the judge re-issued CALJIC 17.10 following the jury's indication that it was split between first-degree murder and involuntary manslaughter. The record is clear that Woodfork's counsel actually did object to the instruction and requested the judge declare a mistrial.[60] Woodfork is not entitled to relief on this ground.

<u>Ground Seven:</u>

In his seventh ground, Woodfork claims his trial counsel was ineffective for failing to object to the prosecution's motion to exclude the introduction of witness testimony concerning the victim's alleged affair and the fact that someone had threatened to kill the victim because of the affair.

---

[57] Lodged Doc. 7, pp. 2-3.

[58] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[59] *Hill,* 474 U.S. at 57.

[60] Reporter's Transcript on Appeal, Vol. III, pp. 845-47.

Woodfork contends his trial counsel should have argued that the victim mistook Woodfork for the individual who had threatened him and attacked Woodfork preemptively. Woodfork also claims that evidence of the victim's affair would have impeached the prosecution's closing statements that the victim was a "law abiding citizen, a loyal husband, and a rightous [*sic*] person."[61]

At the time the prosecution made this motion, Woodfork's attorney did not believe that character of the parties was at issue.  Woodfork has not demonstrated that this tactical decision not to pursue a defense based on the victim's character was unreasonable.  Aside from the fact that the victim may have been threatened, there was no evidence to support Woodfork's theory that the victim was confused as to Woodfork's identity, i.e., that Woodfork physically resembled the person who threatened the victim.  Indeed, even if the jury were to believe Woodfork's assertion that he was only panhandling, there is also no additional evidence that the victim thought Woodfork was anyone other than a stranger asking for spare change.  Woodfork is unable to overcome the "heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[62]

Woodfork's claim that evidence of the victim's extramarital affair could have been used to impeach closing statements by the prosecutor and the victim's family members, is also without merit.  The prosecution's closing arguments occurred at the end of trial, after the timeframe for Woodfork to submit evidence.  Furthermore, Woodfork has not shown that had his counsel tried to submit evidence of the victim's affair, it would have diminished the impact of the victim statements made by the victim's daughter or sister-in-law at sentencing.  Thus, Woodfork is unable to establish prejudice under *Strickland*.  Woodfork is not entitled to relief on his seventh ground.

---

[61]  Petition, p. 77.

[62]  *Murtishaw*, 255 F.3d at 939.

Ground Eleven:

In his eleventh ground, Woodfork claims that his appellate counsel was ineffective for failing to raise all of the grounds he raises in his Petition to this Court.  Woodfork claims there is no evidence that his appellate counsel thoroughly investigated his case.  However, Woodfork bears the burden of proving that his appellate counsel did not adequately investigate the merits of his appeal, a burden which he has failed to meet.[63]  Additionally, the failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[64]  Because none of the grounds Woodfork raises have any merit, his appellate counsel was not ineffective for failing to raise them.

Remaining Grounds:

Ground Four (remaining grounds):

In his fourth ground Woodfork also claims that the trial court erred by admitting the pretext phone call because it violated the Fourth Amendment,  the Fifth Amendment, the Sixth Amendment and a California state law prohibiting eavesdropping.  These arguments will be addressed in order.

Pretext Call violated the Fourth Amendment:

Woodfork's Fourth Amendment argument is foreclosed by the Supreme Court decision in *Stone*.[65]  Under the holding in *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial.[66]  The Ninth Circuit has made it clear that all *Stone* requires is that the State provide a state prisoner a fair and

---

[63] *Id.*

[64] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

[65] *Stone v. Powell*, 428 U.S. 465 (1976).

[66] *Id.* at 482.

full opportunity to litigate his Fourth Amendment claim.[67]  "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."[68]  In this case, Woodfork was provided a fair and full opportunity to present this claim.  Woodfork is not entitled to relief on this claim.

Pretext Call Violated the Fifth Amendment:

Woodfork claims the admission of the pretext phone call violated his Fifth Amendment right against self-incrimination.  Woodfork claims the call amounted to surreptitious interrogation which was designed to elicit incriminating remarks.

The safeguard against self-incrimination which is protected and preserved by the holding in *Miranda v. Arizona*, 384 U.S. 436 (1966), only applies where a suspect is in custody and subjected to interrogation.[69]  In this case, it is undisputed that Woodfork was not in police custody at the time of the call because he was not under arrest, nor was he being detained in a functional equivalent of a formal arrest.[70]  Accordingly, the Fifth Amendment's protections against self-incrimination, as articulated by *Miranda* and its progeny, are not applicable.[71]

Furthermore, in the context of a pretext phone call, "*Miranda* warnings are not required when the suspect is unaware that he is speaking to a law enforcement officer and gives a voluntary statement."[72]  Woodfork is not entitled to relief on this claim.

Pretext Call Violated the Sixth Amendment:

Woodfork claims that the admission of the pretext phone call violated his Sixth Amendment right to confrontation.  Specifically, Woodfork claims that he did not have the

---

[67] *See Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005).

[68] *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

[69] *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

[70] *California v. Beheler*, 463 U.S. 1121, 1125 (1983).

[71] *See Mathis v. United States*, 391 U.S. 1, 5 (1968).

[72] *Illinois v. Perkins*, 496 U.S. 292, 294 (1990).

opportunity to confront his ex-girlfriend, Ms. Smith, concerning the veracity of her statements and her motives for making the call.  The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[73]  In this case, Ms. Smith's statements were not being offered for their truth; they were being offered to give context to Woodfork's incriminating statements.  Accordingly, the trial court did not violate Woodfork's Sixth Amendment right to confrontation.  Woodfork is not entitled to relief on this claim.

Pretext Call Violated State Laws Against Eavesdropping:

Woodfork claims that the police officers who recorded his call with Ms. Smith violated California Penal Code §§ 632 and 632.7.  To the extent that Petitioner raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[74]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[75]  As noted above, this ground is unexhausted.  When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent

---

[73]  *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004); *see Tennessee v. Street*, 471 U.S. 409, 414 (1985).

[74]  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone*, 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[75]  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

review of the record to ascertain whether the state-court decision was objectively unreasonable.[76] To the extent that Woodfork complains that the California trial court misapplied California state laws against eavesdropping by not suppressing the contents of the call, his claim is not properly before this Court.  To the extent he claims that the misapplication of this law resulted in a violation of his Fourth Amendment rights, his claim is foreclosed by *Stone*.[77]  Woodfork is not entitled to relief on this claim, nor is he entitled to any claim for relief presented in his fourth ground.

Ground Five:

Woodfork claims the court improperly permitted the prosecution to introduce evidence that he had been previously convicted of residential robbery in order to impeach him on cross-examination.

The Supreme Court explicitly declined to rule on whether the admission of evidence of prior crimes violates the constitution.[78]  Therefore, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law'" as determined by the Supreme Court.[79]

---

[76] *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

[77] *Stone*, 428 U.S. 465.

[78]  *Estelle*, 502 U.S. at 75 & n. 5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); *see Alberni v. McDaniel*, 458 F.3d 860, 864-67 (9th Cir. 2006).

[79]  *Carey,* 549 U.S. at 77 (2006) (alterations by the Court); *see Wright*, 552 U.S. at 127 (per curiam); *Kessee*, 574 F.3d at 678; *Moses,* 555 F.3d at 753-54 (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

To the extent that Woodfork's petition claims that the trial court and appellate court misapplied state law,[80] this issue is beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[81]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[82]

In order to show that the state courts violated his constitutional rights by misapplying state law, Woodfork would have to demonstrate that "the action complained of . . . violate[d] those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'"[83]  In applying this general principle, Ninth Circuit precedents as well as the precedents of several sister circuits have concluded that it *could* apply to the introduction of propensity evidence.[84]  Nevertheless, the precedents of federal appellate courts are irrelevant after AEDPA.[85]  "[T]he Supreme Court has explicitly reserved consideration of the issue at hand

---

[80]  It is not entirely clear that Woodfork is claiming the trial and appellate courts misapplied state law.  However, in the interest of being thorough, this Court will address the issue.

[81]  *See Engle v. Isaac,* 456 U.S. 107, 128 (1982) (federal court must accept that state courts correctly applied state laws).  *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle*, 502 U.S. at 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton,* 497 U.S. at 653 (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[82]  *Bradshaw,* 546 U.S. at 76; *see also West v. AT&T,* 311 U.S. at 236 ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[83]  *Alberni v. McDaniel*, 458 F.3d at 866 (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)).

[84]  *Id.*

[85]  *See id.*

in *Estelle*.[86]  Thus, this Court is barred from determining whether the improper introduction of propensity evidence could rise to the level of a due process violation.[87]  Woodfork is not entitled to relief on his fifth ground.

Ground Six:

In his sixth ground, Woodfork claims that the trial court violated the Fourteenth Amendment by giving CALJIC 17.10 to the jurors during their deliberations when they indicated they were split in their verdict.  Woodfork fails to cite any Supreme Court decision to support his argument that the state trial court's deadlocked jury instruction violated his constitutional rights.  He thus does not demonstrate that the state court of appeal's decision was "contrary to" or "an unreasonable application of" Supreme Court precedent.

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."[88]  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.[89]  This Court must also assume in the absence of evidence to the

---

[86]  *Id*.

[87]  This Court is mindful that the Ninth Circuit has held: "[W]hen faced with a novel situation we may turn to our own precedent, as well as the decisions of other federal courts, in order to determine whether the state decision violates the general principles enunciated by the Supreme Court and is thus contrary to clearly established federal law."  *Alberni*, 458 F.3d at 865 (citing *Robinson v. Ignacio*, 360 F.3d 1044, 1057 (9th Cir. 2004)).  Indeed, when dealing with a truly novel issue, such exploration of general principles might be appropriate.  However, Vasquez has not asked this Court to do so.  Furthermore, the issue presented in the present case is not a novel issue; the Supreme Court has expressly held that this is an "open question."
The circumstances of this case are more like those present in *Earp v. Ornoski*, 431 F.3d 1158 (9th Cir. 2005), in which the Ninth Circuit declined to declare a constitutional principle as "clearly established" after the Supreme Court had expressly concluded the issue was an "open question."  *Id.* at 1185.  *Earp* effectively held that "the advent of AEDPA forecloses the option of reversing a state court determination because it conflicts with circuit law."  *Id.*

[88]  *Boyde v. California,* 494 U.S. 370, 380 (1990).

[89]  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

contrary that the jury followed those instructions.[90]  In this case, however, Woodfork argues that not only was CALJIC 17.10 itself confusing, but that the manner in which the court gave the instruction was coercive.

Woodfork reasons that by allowing the jury to convict him of a lesser crime, CALJIC 17.10 essentially deprived the jury of the ability to render a split decision.  Woodfork has failed to present a federal constitutional issue to this Court.  While it is true that due process and the Sixth Amendment to the Constitution require that a jury be correctly instructed as to every element of the crime with which a defendant is charged and convicted,[91] that is not the issue before this Court.  The issue before this Court is whether due process requires that a jury in a criminal trial be instructed at all or correctly instructed as to all necessarily included lesser offenses.  First, Supreme Court precedent does not require a trial court to instruct the jury on a lesser included offense in a non-capital case,[92] and the Ninth Circuit has concluded that such a claim is not cognizable on federal habeas review.[93]  It follows, *a fortiori*, that if a failure to instruct on lesser included charges at all does not present a federal issue, a failure to instruct on them correctly also does not present a federal issue.  Furthermore, because CALJIC 17.10 is similar to Ninth Circuit Model Criminal Jury Instruction 3.14 (lesser included offense) this Court is confident that CALJIC does not present a federal, constitutional issue.[94]

---

[90] *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *Francis v. Franklin*, 471 U.S. at 324 n. 9 (1985).

[91] *See United States v. Gaudin*, 515 U.S. 506, 522-23 (1995).

[92] *Beck v. Alabama,* 447 U.S. 625, 638 (1980).

[93] *Solis v. Garcia,* 219 F.3d 922, 929 (9th Cir. 2000); *see* 28 U.S.C. § 2254(d)(1); *Brewer v. Hall,* 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.").

[94] Ninth Circuit Model Criminal Jury Instruction 3.14 reads as follows:
      The crime of [*specify crime charged*] includes the lesser crime of [*specify lesser*

Woodfork next claims that reiterating CALJIC 17.10 to the jurors when they indicated that they were split in their verdict was coercive.  Upon review of the record, this Court is satisfied that, in its context and under all the circumstances, the judge's statement had no coercive effect.  The relevant Supreme Court decision is *Allen v. United States*,[95] and its progeny, pursuant to which a court may instruct the jury to continue deliberating so long as the instruction is not coercive. There was no indication the jury was hopelessly deadlocked because the jury only returned one note to the judge expressing that it was split.  Nor did the judge inform the jury that they "had to reach a decision in this case."[96]  Furthermore, there is no indication the judge was informed of the identity of the minority jurors or even that he knew whether the majority position was leaning toward first-degree murder or manslaughter.[97]

The judge simply informed the jury, if it found the prosecution had not sustained its burden of proving each element of murder beyond a reasonable doubt, but found that the prosecution has sustained its burden of proving the elements of involuntary manslaughter beyond

---

*included crime*]. If (1) [any] [all] of you are not convinced beyond a reasonable doubt that the defendant is guilty of [*specify crime charged*]; and (2) all of you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser crime of [*specify lesser included crime*], you may find the defendant guilty of [*specify lesser included crime*].

In order for the defendant to be found guilty of the lesser crime of [*specify lesser included crime*], the government must prove each of the following elements beyond a reasonable doubt:  [*List elements of lesser included crime.*]

[95]   164 U.S. 492, 501 (1896).

[96]   *See Jenkins v. United States*, 380 U.S. 445, 446 (1965) (Judge's statement: "You have got to reach a decision in this case" was coercive) (per curiam).

[97]   *United States v. Ajiboye*, 961 F.2d 892, 893-94 (9th Cir. 1992) (citing *Brasfield v. United States*, 272 U.S. 448, 450 (1926)) ("If a trial judge inquires into the numerical division of the jury and then gives an Allen charge, the charge is per se coercive and requires reversal."); *United States v. Sae-Chua*, 725 F.2d 530, 532 (9th Cir.1984) (When the judge was aware of the identity of the dissenting juror, the instruction was coercive because it could only be read by the dissenting juror as being leveled at him).

a reasonable doubt, then the jury could return a guilty verdict only for the lesser offense. Despite Woodfork's assertions to the contrary, this instruction actually ensured that he would not be convicted of the greater offense if the jury had a reasonable doubt as to its commission because it conveyed the essential principle that the jury must choose the lesser offense if it entertains any reasonable doubt as to the greater.  Woodfork is not entitled to relief on this ground.

Ground Eight:

In his eighth ground, Woodfork claims the prosecutor used perjured testimony to secure a conviction in violation of the Fourteenth Amendment.  Woodfork claims that Thomas' testimony that Woodfork had seen the victim getting money in the store before the robbery was inconsistent with other evidence that Woodfork had left the store before the victim received any money.

"[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."[98] There is no evidence that the prosecutor in this case knowingly used false or perjured testimony, the essential elements of prosecutorial misconduct.[99]  While Woodfork highlights one area in which the testimony of one witness appears inconsistent, that standing alone is insufficient.[100] As a threshold matter, the testimony at issue is not necessarily inconsistent with the fact that Woodfork had left the store before the victim received any money from the cashier because Woodfork could have seen the transaction from outside the store by looking through the window. Furthermore, Thomas only testified as to what Woodfork told him, not what he had actually

---

[98] *United States v. Agurs*, 427 U.S. 97, 103 (1976).

[99] *See Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw*, 255 F.3d at 959.

[100] *See United States v. Zuno-Arce,* 44 F.3d 1420, 1423 (9th Cir. 1995) (refusing to reverse where defendant "offered no evidence whatsoever for prosecutorial misconduct except for the inference from discrepancies"); *United States v. Wolf,* 813 F.2d 970, 976-77 (9th Cir. 1987) (discrepancies in witness testimony, subject to cross-examination, did not constitute grounds for reversal).

23

witnessed.  Woodfork has failed to show either that the prosecutor knowingly introduced false or perjurious testimony let alone that the prosecutor knew Thomas' story was false.[101]  Woodfork is not entitled to relief on this ground.

Ground Nine:

In his ninth ground, Woodfork claims that there was insufficient evidence to sustain his conviction for first degree murder.  As stated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[102]  This Court must, therefore, determine whether the California court unreasonably applied *Jackson*.  In making this determination, this court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[103]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[104]

Woodfork was convicted of first degree murder under the theory of felony murder.[105] The felony murder rule allows a jury to convict a defendant of first-degree murder when he or

---

[101]  *United States v. Sherlock*, 962 F.2d 1349 (9th Cir. 1989).

[102]  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. ___, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[103]  *Jackson*, 443 U.S. at 318-19.

[104]  *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

[105]  It is clear that the jury convicted Woodfork on the basis of the felony-murder rule because they returned a conviction on first-degree murder while at the same time finding that he had not intentionally discharged the firearm.

24

she unlawfully kills another in the commission or attempted commission of the crime of robbery.[106]  The jury need not find that the killing was pre-meditated or even intentional so long as the perpetrator had the specific intent to commit robbery.[107]  Thus, under California's felony murder statute, the prosecution did not have to prove that the killing was premeditated or that Woodfork acted with malice aforethought.  Thus, Woodfork's contentions that there was no evidence that he acted with malice aforethought or that he did not intend to kill the victim are misplaced in light of California law.

To the extent that Woodfork claims that the evidence was insufficient to show he had the specific intent to commit robbery, his claim is without merit.  As noted above, this Court must consider whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[108]  In this case, the prosecution presented significant evidence that Woodfork had the specific intent to rob the victim, and that the shooting occurred in the course of the attempted robbery.  Rodney Thomas testified that it appeared very obvious to him that Woodfork was trying to take the victim's money before Woodfork shot the victim.[109]  Felton Payne also testified that Woodfork told him that he had killed a man he was trying to rob.[110]  Finally, the prosecution submitted a recorded call in which Woodfork himself admitted several times that he intended to rob the victim.[111]  Thus, if a rational trier of fact found these pieces of evidence credible, he or she could have found that Woodfork intended to rob the victim.  Woodfork is not entitled to relief on his ninth ground.

---

[106]  Clerk's Transcript on Appeal, Vol. I, p. 260.

[107]  Clerk's Transcript on Appeal, Vol. I, p. 260.

[108]  *Jackson*, 443 U.S. at 319 (emphasis in the original).

[109]  Reporter's Transcript on Appeal, Vol. I, p. 275.

[110]  Reporter's Transcript on Appeal, Vol. II, p. 400.

[111]  Clerk's Transcript on Appeal, Vol. II, p. 117-18.

<u>Ground Ten:</u>

In his tenth ground, Woodfork claims that the cumulative effect of the errors committed by the trial court warrant reversal.  As discussed in the previous sections, Woodfork has failed to demonstrate that the trial court committed any errors.  Because there are no errors to cumulate, Woodfork is not entitled to relief on his tenth ground.

<u>CONCLUSION AND ORDER</u>

Woodfork is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[112]

The Clerk of the Court is to enter judgment accordingly.

Dated: November 9, 2010

                    /s/ James K. Singleton, Jr.

**JAMES K. SINGLETON, JR.**
United States District Judge

---

[112]  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

26